IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LARRY LEWIS,                                                                                         PLAINTIFF

V.                                                             CIVIL ACTION NO. 1:20-CV-256-TBM-RPM

JOSHUA CSASZAK, ET AL.,                                                                     DEFENDANTS

**REPORT AND RECOMMENDATIONS**

### I.     Introduction

On August 6, 2020, plaintiff Larry Lewis ("Lewis"), proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 ("Section 1983") civil rights complaint against defendants Warden Joshua Csaszak ("Warden Csaszak"), Superintendent Joe Errington ("Superintendent Errington"), Joseph Cooley ("Cooley"), CID Investigator James Cooksey ("Investigator Cooksey"), and Tower Officer Connie Pearce a/k/a Connie Smith ("Pearce") (collectively, "defendants") alleging violations of his constitutional rights. Doc. [1]. Before the Court is an opposed[1] motion to dismiss filed by defendants Warden Csaszak, Superintendent Errington, Cooley, and Investigator Cooksey, Doc. [35, 37];[2] Lewis' claims against Pearce are before the Court *sua sponte*, 28 U.S.C. § 1915(e)(2). For the reasons that follow, Lewis' Complaint should be dismissed.

---

[1] The Court has construed Lewis' "Motion Claim for Lawsuit Damage Under 42 US 1983" as a response in opposition to the motion. *Williams v. Errington*, No. 1:20–CV–24–RPM, 2022 WL 368817, at *1 n.2 (S.D. Miss. Feb. 7, 2022). While Lewis attached post-attack medical records to his response, Doc. [37], Ex. 1–3, "when the complaint is drafted by a *pro se* plaintiff, the Court may consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint, . . . including, 'documents that a *pro se* litigant attaches to his opposition papers[,]" *Rivera v. Westchester Cnty.*, 488 F. Supp. 3d 70, 76 (S.D.N.Y. 2020) (citations omitted). In this case, since Lewis discussed his post-attack injuries at his *Spears* hearing, Doc. [33], (T. 29); *Wilson*, 926 F.2d at 482, his corresponding medical records may be properly considered here, *Rivera*, 488 F. Supp. 3d at 76.
[2] Since the pending motion relies exclusively on Lewis' *Spears* hearing testimony, *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991), the Court has construed it as a motion to dismiss, Doc. [35].

## II.     Factual Allegations

After suffering previous attacks, Lewis was placed in Area 2, D-2 ("D-Unit") alongside elderly prisoners at the South Mississippi Correctional Institution ("SMCI"). Doc. [33], (T. 9, 19, 22). Thereafter, a Vice Lord inmate known as Killer Bee ("Killer Bee") was transferred to D-Unit after he spent two months in the "hole" for allegedly killing a rival gang member and triggering a prison gang conflict. *Id.*, (T. 12, 19, 23, 33).[3] Killer Bee was sent to D-Unit for his own safety. *Ibid.* Prior to Killer Bee's transfer, Lewis did not know or interact with Killer Bee. *Id.*, (T. 14–15, 20).

While Lewis also did not have any interactions with Killer Bee in D-Unit either, Killer Bee began watching Lewis. Doc. [33], (T. 14–15, 20). Killer Bee also "deputized" an unnamed inmate, who began harassing, and attempting to fight, Lewis. *Id.*, (T. 15–16). While Lewis had a "feeling" that Killer Bee wanted to harm him, Lewis said nothing to prison staff. *Id.*, (T. 14–16, 20). By June 8, 2020, however, Lewis believed he was about to be harmed and alerted the tower guard, Pearce, that "things were about to get serious." *Id.*, (T. 16, 32). Lewis did not mention Killer Bee to Pearce but another inmate instead–i.e. Killer Bee's purported deputy. *Id.*, (T. 16–17). Roughly a minute after Lewis alerted Pearce, Killer Bee began hitting Lewis with a weighted cafeteria tray. *Id.*, (T. 34). According to Lewis, there was "[w]asn't nothing [sic] nobody could do" to prevent the assault and "the only way an officer could've [sic] got there was to fly on [sic] a helicopter." *Id.*, (T. 18).

Shortly after Killer Bee began hitting Lewis, Pearce spotted the attack and opened the Zone door to facilitate Lewis' escape from Killer Bee. Doc. [33], (T. 11, 27). Lewis concedes that Pearce could not have taken any further steps to protect Lewis from her location and her actions "saved

---

[3]Allegations made at the *Spears* hearing supersede those in the original Complaint. *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987); *Flores v. Livingston*, 405 F. App'x 931, 931–32 (5th Cir. 2010). That is, a prisoner's *Spears* hearing testimony clarifies and amends his original Complaint. *See*, *e.g.*, *Brent v. MTC*, No. 5:20–CV–173–DCB–MTP, 2021 WL 5985155, at *1 (S.D. Miss. Sept. 16, 2021) (citing *Flores*, 405 F. App'x at 931–32), *adopted*, No. 5:20–CV–173–DCB–MTP, 2021 WL 5985148 (S.D. Miss. Dec. 16, 2021). Since Lewis did not raise his conditions of confinement claims at the *Spears* hearing—and affirmed that he discussed all of his claims at that hearing, those claims are not part of Lewis' present lawsuit. Doc. [7]; [33], (T. 30, 35).

[his] life." *Id.*, (T. 26–28). The attack left Lewis with significant bruising and swelling, though no broken bones. *Id.*, (T. 29). After these events, Lewis filed grievances about the attack, but Superintendent Errington and Cooley did not investigate. *Id.*, (T. 23–24). Likewise, Lewis informed Investigator Cooksey that he, Lewis, wanted to press charges against Killer Bee, but Investigator Cooksey did not follow up about charging Killer Bee. *Id.*, (T. 25, 29). For her part, Pearce did not file an incident report or RVR in connection with the attack. *Id.*, (T. 26, 28, 36). Finally, Lewis was moved to a different Zone after the attack. *Id.*, (T. 12).

### III. Claims

Any "document filed *pro se* is 'to be liberally construed[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam*). Nevertheless, there are "limits" to how liberally a court will construe a *pro se* plaintiff's pleading. *See*, *e.g.*, *Frazier v. Morris*, No. 2:11–CV–104–MPM–DAS, 2014 WL 4686723, at *3–*4 (N.D. Miss. Sept. 18, 2014). Relevant here, "even a liberally construed *pro se* complaint 'must set forth facts giving rise to a claim on which relief may be granted[,]'" *Gressett v. City of New Orleans*, No. CV 17–16628, 2018 WL 3642008, at *2 (E.D. La. Aug. 1, 2018) (quotation omitted), *aff'd*, 779 F. App'x 260 (5th Cir. 2019), and the Court may not "construct a claim out of whole cloth if the plaintiff fails to supply the necessary facts or a cognizable theory in support of a claim[,]" *Jarvis v. Grady Mgmt., Inc.*, No. CIV. PJM 13–3853, 2015 WL 363620, at *2 (D. Md. Jan. 22, 2015).

With the above in mind, the Court understands Lewis to raise the following claims. First, Lewis alleges that Pearce (i) failed to protect him from Killer Bee, and (ii) failed to submit a post-attack incident report or RVR. Doc. [33], (T. 26, 28, 36); [37], at 10–11. Second, Lewis alleges that Warden Csaszak (i) failed to protect him by placing a dangerous inmate, Killer Bee, in D-Unit, and (ii) generally failed to supervise the other defendants Doc. [33], (T. 22, 32–33); [37], at 10.

Third, Lewis alleges that Superintendent Errington and Cooley (i) failed to investigate post-attack grievances filed by Lewis, and (ii) failed to follow prison procedure. Doc. [33], (T. 23–24); [37], at 3, 8–9. Fourth, and finally, Lewis alleges that Investigator Cooksey (i) failed to press for criminal charges to be brought against Killer Bee and (ii) failed to follow prison procedure. Doc. [33], (T. 25–26); [37], at 11–12. Lewis is suing the defendants in their individual and official capacities.

## IV.    Analysis: Official Capacity Claims

Under Rule 12(b)(1), a party or claim can be dismissed for lack of subject matter jurisdiction. *See Beleno v. Lakey*, 306 F. Supp. 3d 930, 938–39 (W.D. Tex. 2009). Rule 12(b)(1) applies in the Eleventh Amendment context. *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). In evaluating a Rule 12(b)(1) motion, the Court "must take all of the factual allegations in the complaint as true, but . . . [it is] not bound to accept as true a legal conclusion couched as a factual allegation . . . . [A] district court is empowered to find facts as necessary to determine whether it has jurisdiction." *Id.* (quoting *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015)).[4]

Pursuant to the Eleventh Amendment, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. Of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (collecting cases). This means that the State sovereign, including its departments and agencies, is generally immunized from cases seeking monetary damages or equitable relief. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). There are, however, exceptions to the general rule of sovereign immunity: (i) a state may consent to be sued, *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675–676, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); (ii) Congress may "unequivocally"

---

[4] Sovereign immunity may be raised *sua sponte*. *Cephus v. Texas Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 825 (S.D. Tex. 2015).

abrogate state immunity through "a valid exercise of [its] power," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); or (iii) a litigant may sue a state official in his official capacity seeking prospective injunctive relief to redress an ongoing violation of federal law, *Ex parte Young* [*Young*], 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Here, the MDOC is an "arm" of the State of Mississippi. *See*, *e.g.*, *Brown v. Perry*, No. 3:19–C–544–RPM, 2021 WL 1160964, at *5 (S.D. Miss. Mar. 25, 2021). Mississippi has not waived sovereign immunity in Section 1983 cases, including the present case. Miss. Code Ann. § 11–46–5(4). Congress did not abrogate state sovereign immunity in Section 1983 cases. *Quern v. Jordan*, 440 U.S. 332, 340, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Finally, *Young* does not apply because Lewis is asserting claims about past events that have concluded. Doc. [33]. For these reasons, the defendants are entitled to sovereign immunity insofar as Lewis is suing them in their official capacity.

## V. <u>Analysis:</u> Individual Capacity Claims

### A. Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, the Court "must accept all well-pleaded facts as true, and [] view them in the light most favorable to the plaintiff." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* "Threadbare recitals of the elements of a cause of action, [however,] supported by mere conclusory statements,

do not suffice[]" as factual allegations and are viewed instead as legal conclusions couched as factual allegations. *Ibid.* Finally, the Court's review encompasses: "'the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quotation omitted).

### B. Failure to Protect

#### i. Law

Prison officials have a constitutional duty to protect prisoners "from violence at the hands of their fellow inmates," *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (quoting *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006)), but "not every injury at the hands of another" inmate rises to the level of a constitutional violation, *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (citation omitted). To state a failure to protect claim, a prisoner must allege that (1) "he is incarcerated under conditions 'posing a substantial risk of serious harm,'" and that (2) "the prison official's state of mind is one of 'deliberate indifference' to the prisoner's health or safety." *Williams*, 956 F.3d at 811 (quoting *Horton*, 70 F.3d at 400–1). That is, to state a failure to protect claim, Lewis must allege that prison "personnel knew of a substantial risk of serious harm and failed to act." *Vela v. Garcia*, 728 F. App'x 285, 287 (5th Cir. 2018).

#### ii. Pearce

In this case, Lewis did not tell Pearce that he feared that Killer Bee would attack him. Doc. [33], (T. 16–17, 32). Indeed, Lewis only named another inmate—and only named him moments before the attack. *Id.*, (T. 16–17). At most, therefore, Lewis alleged that Pearce knew about Killer Bee's general reputation for violence and did not take additional steps to protect Lewis.

6

*McCartney*, 970 F.2d at 47. However, "[a]n inmate's history of violence *alone* is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates." *Williams*, 956 F.3d at 812 (emphasis added) (quoting *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011)). Furthermore, Lewis failed to allege that Pearce *disregarded* an excessive risk of harm. *Longoria*, 473 F.3d at 593 ("No liability exists . . . if an official reasonably responded to a known substantial risk, 'even if the harm was ultimately not averted.'"). According to Lewis, Pearce could not prevent the attack; she only became aware of *any* threat to Lewis moments before the attack; she could not physically intervene; she thwarted the assault to the extent possible from her location; and she saved Lewis' life. Doc. [33], (T. 26–28). For these reasons, Lewis failed to state a failure to protect claim against Pearce. *Williams*, 956 F.3d at 812.

### iii. Warden Csaszak

With regard to Warden Csaszak, Lewis concedes that he neither knew nor interacted with Killer Bee before Killer Bee's transfer. *Id.*, (T. 14–15, 20). Further, Lewis neither alleges that Warden Csaszak knew him nor harbored ill will toward him. Doc. [33], (T. 21–22). In fact, Lewis concedes that Killer Bee was moved to D-Unit in light of threats to Killer Bee's life and Warden. *Id.*, (T. 12, 19). In opposition to the defendants' motion, Lewis concedes that he is suing Warden Csaszak "solely" because he is the warden and responsible for overseeing SMCI. Doc. [37], at 2. *At most*, therefore, Lewis alleges that Warden Csaszak knew Killer Bee was generally dangerous and put him in D-Unit anyway in light of threats to Killer Bee's life. *McCartney*, 970 F.2d at 47. As noted above, Killer Bee's general reputation for prison violence is legally insufficient, without more, to impute subjective knowledge of Killer Bee's danger to other inmates onto Warden Csaszak. *Williams*, 956 F.3d at 812 (finding that transfer of dangerous prisoner to plaintiff's unit

after fighting another prisoner did not lead to the inference that he would fight plaintiff). For these reasons, Lewis failed to state a failure to protect claim against Warden Csaszak.

### iv.     Superintendent Errington, Investigator Cooksey, and Cooley

Out of an abundance of caution, the Court assumes *arguendo* that Lewis also asserted a failure to protect claim against Superintendent Errington, Investigator Cooksey, and Cooley. Lewis only alleges that these defendants failed to act after the attack. Doc. [33], (T. 23–6). However, Lewis does not allege that Killer Bee or anyone attacked him after the above-described events. Lewis has failed to state a failure to protect claim against these defendants.

### C.  Failure to Report

Lewis alleges that Pearce violated his constitutional rights by failing to file an incident report or RVR, in contravention of her job responsibilities, about Killer Bee after the attack. Doc. [33], (T. 26, 28, 36). However, Lewis concedes that he was moved to another cell unit after the attack. *Id.*, (T. 12). Lewis also does not allege that Killer Bee attacked him again. Doc. [33]. In fact, Lewis does not allege that Pearce's failure to report led to *any* future harm of a constitutional magnitude. *Ibid.* Instead, this claim is premised exclusively on Pearce's failure to report.[5] *Id.*, (T. 26, 28, 36). However, "violations of prison rules do not alone rise to the level of [a] constitutional violation[.]" *Scheidel v. Sec'y of Pub. Safety & Corr.*, 561 F. App'x 426, 427 (5th Cir. 2014) (per curiam) (citation omitted). *See also Spann v. Strain*, 726 F. App'x 265, 266 (5th Cir. 2018) ("[A] state's failure to follow its own rules does not constitute a due process violation."). For these reasons, Lewis has failed to state a prison procedure-related claim against Pearce. *Ibid.*

---

[5] Even assuming *arguendo* that Pearce played an investigative role, any "[f]ailure to investigate or prosecute an offense does not give rise to § 1983 liability." *Rolen v. City of Brownfield*, Tex., 182 F. App'x 362, 364 (5th Cir. 2006).

### D. Failure to Investigate Grievances

Turning to Lewis' claims against Superintendent Errington and Cooley, an inmate does not have "a federally protected liberty interest in having [prison] grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (per curiam). In turn, Lewis merely alleges that these defendants violated his constitutional rights by failing to investigate his grievance allegations about Killer Bee, Doc. [33], (T. 23–24), and, therefore, Lewis "relies on a legally nonexistent [liberty] interest[] [and] any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless[,]" *Geiger*, 404 F.3d at 374. Since Superintendent Errington and Cooley did not violate Lewis' rights through their failure to investigate his grievances and Lewis has not presented any other factual allegations against these defendants, they did not violate his rights by simply failing to follow prison procedure. *Spann*, 726 F. App'x at 266; *Scheidel*, 561 F. App'x at 427. For these reasons, Lewis has failed to state any claims against Superintendent Errington and Cooley.

### E. Failure to Press Charges

Next, the Court turns to Lewis' claim that Investigator Cooksey violated his constitutional rights by failing to press charges against Killer Bee. Doc. [33], (T. 25–26). It is well-established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Indeed, "[t]hird parties do not enjoy a constitutionally protected right to have wrongdoers criminally investigated or prosecuted, even if a third party is the victim of an alleged wrongdoer[']s criminal acts." *Doe v. City of Pharr*, No. 7:14–CV–285, 2014 WL 12646038, at *2 (S.D. Tex. Aug. 13, 2014) (quoting *Merritt v. City of Ennis*, No. CIV.A.3:04–CV–2606–G, 2005 WL 440408, at *3 (N.D. Tex. Feb. 24, 2005)), *aff'd*, 652 F. App'x 259 (5th Cir. 2016). *See also Love v. Bolinger*,

927 F. Supp. 1131, 1137 (S.D. Ind. 1996); *Johnson v. Craft*, 673 F. Supp. 191, 193 (S.D. Miss. 1987). Since Investigator Cooksey's failure to press charges did not violate Lewis' rights and Lewis has not presented other factual allegations against him, Investigator Cooksey's failure to follow prison procedure did not violate Lewis' rights. *Spann*, 726 F. App'x at 266; *Scheidel*, 561 F. App'x at 427. For these reasons, Lewis has failed to state any claims against Investigator Cooksey.

### F. Supervisory Liability

"Under Section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted). Instead, supervisors may only be held liable if: "(i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in [a] plaintiff's injury." *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citations omitted). "Under the first theory, a supervisor may be held individually liable if he has 'personal involvement' in the underlying 'constitutional deprivation.'" *Jackson v. Hall*, No. 1:19–CV–332–LG-RPM, 2022 WL 1194692, at *7 (S.D. Miss. Jan. 27, 2022) (quotation omitted), *adopted*, No. 1:19–CV–332–LG–RPM, 2022 WL 731530 (S.D. Miss. Mar. 10, 2022). Under the second theory, a supervisor may be held individually liable if he implements "a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation[.]'" *Brown v. Cain*, 546 F. App'x 471, 475 (5th Cir. 2013) (quotation omitted). Finally, absent personal involvement, "supervisor liability requires an underlying constitutional violation before such liability can be imposed." *Tamez v. Manthey*, 589 F.3d 764, 772 (5th Cir. 2009) (quotation omitted).

Here, insofar as Lewis sues Warden Csaszak on a theory of vicarious liability, he has failed to state a claim. *Mouille*, 977 F.2d at 929. Next, the Court already concluded that Warden Csaszak, through his actions or inaction, did not personally violate Lewis' constitutional rights. In turn, Lewis' first route to supervisory liability is foreclosed. Second, since Lewis has failed to state an underlying constitutional violation, he cannot proceed against Warden Csaszak under the second theory. *Tamez*, 589 F.3d at 772. For these reasons, Lewis has failed to state a supervisory liability claim against Warden Csaszak.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the [35] motion to dismiss filed by Warden Csaszak, Superintendent Errington, Cooley, and Investigator Cooksey should be granted in its entirety. The Court further recommends that Lewis' claims against Pearce should be dismissed *sua sponte*. 28 U.S.C. § 1915(e)(2). This lawsuit should be dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy

shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 13th day of July 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE