IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LARRY LEWIS**                                                                                        **PLAINTIFF**

v.                                                         CIVIL ACTION NO. 1:20-cv-256-TBM-RPM

**JOSHUA CSASZAK**, *Warden*;
**JOE ERRINGTON**, *Superintendent;*
**CONNIE PEARCE**, *Tower Officer*,
*a.k.a*, **CONNIE SMITH**;
**STAFF OF ADMINISTRATIVE
SMCI; JOSEPH COOLEY;** *and*
**JAMES COOKSEY**, *SMCI Director*
*of Correction Investigation Division*                                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Larry Lewis, an inmate at the Southern Mississippi Correctional Institute, brings this *pro se* suit against Joshua Csaszak, Joe Errington, Connie Pearce, Joseph Cooley, and James Cooksey. He alleges that these Defendants violated his rights under the Eighth and Fourteenth amendments when they did not take action against a fellow inmate who assaulted Lewis. [1], pp. 3-9.

The Magistrate Judge in this case has issued a Report and Recommendation [38] regarding the Motion for Summary Judgment [35] filed by Csaszak, Errington, Cooley, and Cooksey and the Motion Claim for Lawsuit Damage [37] filed by Lewis.[1] The Report and Recommendation found that Lewis' claims should be dismissed because the Defendants are entitled to sovereign immunity and qualified immunity. [38], pp. 4-11. Lewis filed a "Report of Objection." [39]. This Court has reviewed the objections, recommendations, and the other filings in this case. Because the Report and Recommendation correctly analyzed the facts and the law, this Court adopts it.

---

[1] The Magistrate Judge construed Lewis' Motion Claim for Lawsuit Damage as a response to the Motion for Summary Judgment. Lewis does make any objection to this construal, so this court elects to do the same.

## I. BACKGROUND AND PROCEDURAL HISTORY

Lewis is around fifty-seven years old and serving a life-sentence at the Southern Mississippi Correctional Institute (SMCI) in Leaksville, Mississippi. [1], p. 2; [33], p. 9. Lewis was convicted of having sex with a minor. [33], p. 9.

Over two weeks in the summer of 2020, Lewis asserts that an unnamed fellow inmate harassed him. [33], p. 14. Allegedly, this unnamed harasser would walk up to Lewis, kick him and hit him, and Lewis would ignore him. [33], p. 15. On June 8, 2020, shortly after eating, Lewis saw this inmate approaching and alleges he told a tower guard named Connie Pearce "there's fixing to be a blood bath in here[.]" [33], p. 13. Lewis told the Magistrate Judge that this warning did not give any of SMCI's staff any time to do anything before the assault occurred. [33], p. 18. A minute later, Killer Bee, an inmate affiliated with the unnamed harasser, hit Lewis with a dining tray. [33], pp. 13-14. Killer Bee hit him six times. [33], p. 13. According to Lewis, Killer Bee is a member of the Vice Lords gang. [33], p. 11.

Lewis escaped Killer Bee's assault through a door he alleges was opened by Connie Pearce. [33], p. 27. In Lewis' words, this saved his life. [33], p. 27. The next day, Lewis asserts he went to SMCI's Investigations Director James Cooksey and told him about the assault. [33], p. 25. Cooksey allegedly took Lewis to the infirmary, and Lewis told him he wanted to press charges against Killer Bee. [33], p. 25. Lewis asserts that Cooksey replied that he would bring the facts to the prosecutor, but that it would ultimately be the prosecutor's decision whether to file criminal charges against Killer Bee. [33], p. 25.

Five days later, on June 12, 2020, Lewis filed a request for an administrative remedy with the Mississippi Department of Corrections Administrative Remedy Program. [1-1], p. 6. Lewis laid

out the sequence of the assault before stating he wanted a "charge of assault" against Killer Bee and also stating he wanted two million dollars for pain and suffering for not being protected from an affiliated gang member. [1-1], p. 6. Joseph Cooley, an investigator with the Administrative Remedy Program, sent Lewis a letter on June 25, 2020, rejecting his requests. [1-1], p. 5. The letter noted that "[a]ny type of requests for compensation will be returned. Compensation is an issue determined by the court and the ARP does not handle lawsuits or matters involving the courts." [1-1], p. 5.

Lewis filed a renewed request on June 30, 2020. [1-1], p. 2. It reiterated his prior statement. [1-1], pp. 2-3. Additionally, Lewis alleged that "staff failed to reporting [sic] the incident" and "[t]he staff knew that there was a substantial risk you [sic] would be seriously harmed by been housed with gang member at SMIC." [1-1], pp. 3-4. Cooley again denied Lewis' request, noting again the compensation problem and also stating that "[t]he ARP cannot file criminal charges against an offender. Criminal charges are filed in court by the district attorney. It is a court matter and ARP does not have authority in matters involving the court." [1-1], p. 1.

Lewis subsequently filed his suit under 42 U.S.C. § 1983. [1], p. 3. Section 1983 creates a cause of action for any person who suffers "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by someone acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia." The Court granted him leave to proceed *in forma pauperis*, [5]. Csaszak, Errington, Cooley, and Cooksey filed a joint Answer denying Lewis' allegations that they violated his civil rights. [18]. Pearce filed a short *pro se* response to Lewis' Complaint, stating "I, Connie Pierce, was not employed by the Mississippi Department of Corrections on June 8, 2020. I, Connie Pierce, have never been

employed at the South Mississippi Correctional Institution as a Correctional Tower Office[r]." [27], p. 1.[2]

The Magistrate Judge then held a video conference to screen Lewis' suit in accordance with the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2). [33], pp. 1-3.[3] At the conference, Lewis recounted the assault and clarified that he sued Csaszak, SMCI's warden, for "put[ting] [Killer Bee] in a zone with old folks and try to hide him out . . . he is putting everybody else's lives in danger." [33], p. 22. Lewis stated that he sued Errington, SMCI's superintendent, "[b]ecause he didn't do nothing about it. . . . They didn't do no kind of investigation, didn't do nothing, didn't check on nothing." [33], p. 23. He sued Cooley for the same reasons, stating "[h]e is doing the same thing, too. He supposed to check in and make sure—about the same with both of them." [33], p. 24. Lewis sued Cooksey because after he told Cooksey he wanted to press charges, Lewis "never heard nothing more about it. Nothing. They didn't do nothing. It was like it never happened." [33], p. 25. Finally, Lewis sued Pearce because "[s]he didn't do no complaint. She watched the whole incident. She didn't file no complaint, she didn't write no RVRs. It's like she covering it up for him." [33], p. 26.

After the video conference, Csaszak, Errington, Cooley, and Cooksey filed their joint Motion for Summary Judgment on the bases of sovereign and qualified immunity. [35], p. 1. The Motion for Summary Judgment also noted that Pearce asserted she has never been employed as a Tower Guard at SMCI and urged the Court to dismiss the claims against her as well. [35], p. 2 n.2.

---

[2] The Court notes the discrepancy between Pearce's name as spelled in the official caption of this case and in her Answer. She is referred to as Pearce throughout this opinion in order to remain consistent with Lewis' pleadings.

[3] Under *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985) (abrogated on other grounds by *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)), Lewis' allegations as articulated at the hearing supersede those made in his Complaint.

Lewis filed a document entitled "Plaintiff Motion Claim For Lawsuit damage under 42 US 1983." [37]. This responded to the Motion for Summary Judgment by reiterating Lewis' claims from his Complaint and administrative requests. [37]. The Magistrate Judge reviewed these motions and issued a Report and Recommendation granting the Motion for Summary Judgment and dismissing the claims against Pearce. [38], p. 1. Lewis objected to the Report and Recommendation and reiterated his earlier claims. [39], pp. 1-4.

## II. STANDARD OF REVIEW

When an objection is lodged against a magistrate judge's recommendation, this Court reviews the issues raised *de novo*. 28 U.S.C. § 636(b)(1). Here, Lewis does not clearly identify the portions of the Magistrate Judge's Report and Recommendation to which he is objecting. *See Habets v. Waste Mgmt., Inc.*, 363 F.3d 378, 381 (5th Cir. 2004) (noting that in accord with the statute parties may "file specific written objections." (citing 28 U.S.C. § 636(b)(1))). His "Report of Objection" merely restates his earlier allegations and includes statements taken from the Magistrate Judge's Report and Recommendation; it does not specifically object to any point in the Report and Recommendation. Given Lewis' lack of specific objections, plain error review applies rather than *de novo*. *Wallace v. Mississippi*, 43 F.4th 482, 495 (5th Cir. 2022). But merely to be thorough, this Court has reviewed the Magistrate Judge's Report and Recommendation *de novo*.

## III. ANALYSIS

The Report and Recommendation evaluated Csaszak, Errington, Cooley, and Cooksey's Motion for Summary Judgment, but the Magistrate Judge construed that Motion as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [38], p.1 n.2. Neither party

5

objects to this, so this Court will do the same. [4] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gonzalez v. Trevino*, 42 F.4th 487, 491 (5th Cir. 2022) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)). These elements are evaluated under "the standard pleading burden[.]" *Smith v. Heap*, 31 F.4th 905, 910 (5th Cir. 2022). "[A] complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Smith*, 31 F.4th at 910 (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)).

The Magistrate Judge also advised dismissing the claim against Connie Pearce for failure to state a claim.

**A. Csaszak, Errington, Cooley, and Cooksey's Defenses of Sovereign Immunity**

To begin, Csaszak, Errington, Cooley, and Cooksey all assert sovereign immunity to defeat any claims brought by Lewis against them in their official capacities. They argue that in their official capacity they are Mississippi's officials, so this suit against them is actually a suit against Mississippi and a federal court cannot hear it. Because sovereign immunity is a jurisdictional question, the plaintiff has the burden to demonstrate it does not apply. *See Pickett v. Tex. Tech Univ. Health Sci. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022).

---

[4] Even if the summary judgment standard was applied—a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a)—the result would be the same because Lewis "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (quoting *Terral River Serv., Inc. v. SCF Marine, Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021)).

6

"In our constitutional scheme, a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 140 S. Ct. 994, 1000, 206 L. Ed. 2d 291 (2020). Sovereign immunity also applies to arms of the state as well as the state itself. *See Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 273 (5th Cir. 2020) ("The Eleventh Amendment bars federal 'suits against a state, a state agency, or a state official in his official capacity[.]'" (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015))). This immunity "does not apply when the state consents to suit or when Congress abrogates the state's immunity." *Turnage v. Britton*, 29 F.4th 232, 239 (5th Cir. 2022) (citing *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)). "Additionally, under *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), sovereign immunity does not bar suits against state officers for prospective declaratory or injunctive relief because officers act as private persons 'stripped of [their] official clothing' when they violate federal law." *Turnage*, 29 F.4th at 239 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)).

Here, none of the parties contest that SMCI is part of the Mississippi Department of Corrections. *See* MISS. CODE ANN. §§ 47-5-108, 47-5-1205. Additionally, none of the parties contest that the Mississippi Department of Corrections is an arm of the state of Mississippi. *See Rucker v. Hall*, No. 1:19-cv-901-RHWR, 2022 WL 1207151, *3 (S.D. Miss. April 22, 2022) ("MDOC is an arm of the State of Mississippi, and its officers and employees are protected from suits for money damages in their official capacities by the Eleventh Amendment." (citing *Hines v. Miss. Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000))) Therefore Csaszak, Errington, Cooley, and Cooksey as SMCI or Mississippi Department of Corrections officials can assert sovereign immunity.

7

Further, "Congress has not abrogated the states' immunity from section 1983 claims." *Turnage*, 29 F.4th at 239. And Mississippi "has not waived its state sovereign immunity and consented to suit in federal court." *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (citing MISS. CODE ANN. § 11-46-5(4)). This leaves the *Ex Parte Young* exception for injunctive relief as the only avenue for Lewis to sue Csaszak, Errington, Cooley, and Cooksey in their *official* capacities. But, as Lewis is seeking damages and not injunctive relief, *Ex Parte Young* does not apply and sovereign immunity bars those claims. *See Turnage*, 29 F.4th at 239. To the extent Lewis objected to the Report and Recommendation on this point, that objection is overruled.

**B. Csaszak, Errington, Cooley, and Cooksey's Defenses of Qualified Immunity**

While sovereign immunity disposes of the claims against Csaszak, Errington, Cooley, and Cooksey in their official capacities, any personal claims asserted against them while acting in their official capacities remain. Csaszak, Errington, Cooley, and Cooksey assert qualified immunity to defeat these claims. Because qualified immunity is "an affirmative defense," when "raised by the defendant, the 'plaintiff has the burden to negate the assertion of qualified immunity.'" *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quoting *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)).

"Qualified immunity protects public officials from liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Laviage v. Fite*, --- F.4th ----, No. 21-20678, 2022 WL 3714737, *2 (5th Cir. Aug. 29, 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Therefore "[t]o overcome qualified immunity, the plaintiff must allege facts showing (1) the officer violated a constitutional right, and (2) 'the right was "clearly established" at the time of the

challenged conduct.'" *Laviage*, 2022 WL 3714737, *2 (quoting *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022)). "An official's conduct violates a clearly established right when the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Harris v. Clay Cnty., Miss.*, --- F.4th ----, No. 21-60456, 2022 WL 3646129, *4 (5th Cir. Aug. 24, 2022). (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "That clearly established right, however, cannot be defined 'at too high a level of generality.' It must be '"particularized" to the facts of the case' establishing the right." *Harris*, 2022 WL 3646129, *4 (internal citations omitted) (first quoting *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11, 211 L. Ed. 2d 170 (2021); and then quoting *Anderson*, 483 U.S. at 640).

**1. Lewis' Claim Against Csaszak for Allowing Dangerous Conditions**

As detailed above, Lewis is suing Csaszak for "put[ting] [Killer Bee] in a zone with old folks and try to hide him out . . . he is putting everybody else's lives in danger." [33], p. 22. Lewis is correct that "[p]rison officials 'have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates.'" *Williams*, 956 F.3d at 811 (quoting *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006)). But "[n]ot every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation[.]" *Id.* (quoting *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995)). To demonstrate that an injury suffered at the hands of another inmate violates a clearly established right a "plaintiff must prove that (1) 'he is incarcerated under conditions "posing a substantial risk of serious harm,"' and that (2) 'the prison official's state of mind is of "deliberate indifference" to the prisoner's health or safety.'" *Id.* (quoting *Horton*, 70 F.3d at 400-01). Proving deliberate indifference "requires [showing] that 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

9

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

Here, Lewis has offered "no evidence in the record to suggest that [Csaszak] knew [Killer Bee] was a member of the Vice Lords gang or otherwise posed a specific threat to [Lewis] when they moved him into [Lewis'] zone." *Id.* at 812. Lewis even testified that prior to the incident he had had no issues with Killer Bee, that he had no idea who Killer Bee was before he was moved into Lewis' zone in SMCI, and that Killer Bee was there for over a year before the assault occurred. [33], pp. 14-15, 20. *See id.* ("Even Williams, when asked if he perceived Ward as a threat at the time Ward was moved into Williams's zone testified, 'Not really. Not as a threat right—not right then.'"). Because Lewis has not provided evidence bearing on any substantial risk of the serious harm posed by Killer Bee or Csaszak's knowledge or state of mind, he cannot refute Csaszak's qualified immunity defense and thus has failed to state a plausible claim for relief. To the extent Lewis objected to the Report and Recommendation on this point, that objection is overruled.

**2. Lewis' Claims Against Errington and Cooley for Failing to Investigate**

Lewis sued Errington "[b]ecause he didn't do nothing about [the assault]. . . . They didn't do no kind of investigation, didn't do nothing, didn't check on nothing." [33], p. 23. He sued Cooley for the same reasons, stating "[h]e is doing the same thing, too. He supposed to check in and make sure—about the same with both of them." [33], p. 24.

But, Lewis' claims fail at qualified immunity's first step because "prisoners have no due process rights in the inmate grievance process." *Alexander v. Tex. Dep't of Crim. Justice*, 951 F.3d 236, 240 (5th Cir. 2020) (citing *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)). This includes having "prison disciplinary or administrative proceedings (including informal complaints)

properly investigated, handled, or favorably resolved[.]" *Repath v. LeBlanc*, Civil Action 20-768-BAJ, 2022 WL 3500205, *4 (M.D. La. July 25, 2022) (citing *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007)). *See also Williams v. Errington*, No. 1:20-cv-24-RPM, 2022 WL 368817, *4 (S.D. Miss. Feb. 7, 2022) ("Since Williams alleges that Errington, Barnes, and Shelby violated his due process rights by failing to investigate his grievance . . . he 'relies on a legally nonexistent [liberty] interest[] [and] any alleged due process violation arising from the alleged failure to investigate . . . is indisputably meritless.'" (quoting *Geiger*, 404 F.3d at 374)); *Wedgeworth v. Mississippi*, No. 3:17-cv-730-CWR, 2018 WL 1463496, *7 (S.D. Miss. Mar. 23, 2018) ("Wedgeworth 'does not have a federally protected interest in having th[is] grievance[] resolved to his satisfaction.' Even the failure to investigate a grievance, by itself, does not rise to the level of a constitutional violation." (internal citations omitted) (quoting *Geiger*, 404 F.3d at 374)).

Thus, "to the extent that [Lewis] alleges that [Errington or Cooley] failed to investigate his grievance adequately, such an allegation does not constitute a claim under [section] 1983." *Robinson v. Hogans*, No. 3:15-cv-263-TSL, 2007 WL 6391566, *4 (S.D. Miss. Nov. 13, 2017) (citing *Geiger*, 404 F.3d at 374). Therefore, Lewis cannot refute Errington and Cooley's qualified immunity defense and he has failed to state a plausible claim for relief. To the extent Lewis objected to the Report and Recommendation on this point, that objection is overruled.

### 3. Lewis' Claim Against Cooksey for Failing to Investigate or Bring Charges

Similar to Errington and Cooley, Lewis alleges Cooksey failed to investigate his claims against Killer Bee. As noted above, that assertion will not defeat qualified immunity. But Lewis also alleges that after he told Cooksey that he wanted charges filed against Killer Bee, Lewis "never

11

heard nothing more about it. Nothing. They didn't do nothing. It was like it never happened." [33], p. 25.

To the extent this is also a failure to investigate or sufficiently carry out the grievance process, it also does not allege a constitutional-rights violation. But, even if it alleged something more than that, "Supreme Court precedent makes clear that a citizen does not have standing to challenge the policies of the prosecuting authority . . . . [E]ach of us has a legal interest in how *we* are treated by law enforcement—but not . . . in how *others* are treated by law enforcement. *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021) (internal citation omitted) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-19, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973)). *See also Diamond v. Charles*, 476 U.S. 54, 64, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986) ("Diamond could not compel the State to enforce [a law] against appellees because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" (quoting *Linda R.S.*, 410 U.S. at 619)). Thus, Lewis also fails to articulate a constitutional rights violation if he asserts that Cooksey should have forced the prosecutor to charge Killer Bee with a crime. Therefore, Lewis cannot refute Cooksey's qualified immunity defense and he has failed to state a plausible claim for relief. To the extent Lewis objected to the Report and Recommendation on this point, that objection is overruled.

**C. Lewis' Claim Against Pearce for Failing to File a Report**

While Pearce has not filed a dispositive motion, the Magistrate Judge still recommended dismissing the claims against her under 28 U.S.C. § 1915(e). This code section provides that when a plaintiff proceeds *in forma pauperis* "the court shall dismiss the case at any time if . . . the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). The Magistrate Judge dismissed the suit against Pearce for failure to state a claim.

Here, Lewis sued Pearce because "[s]he didn't do no complaint. She watched the whole incident. She didn't file no complaint, she didn't write no RVRs. It's like she covering it up for him." [33], p. 26. Again, to the extent that Lewis alleges that his claims were not properly investigated because of Pearce's actions or failure to act, that allegation fails for the reasons previously stated. But even if he alleges more than that, failure to follow a prison regulation, policy, or procedure on its own is not enough to allege a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("The claim is that the mere failure of the TDC officials to follow their regulations was a constitutional violation. There is no such controlling constitutional principle."); *Williams*, 956 F.3d at 812 ("[A], prison official's failure to follow the prison's own policies, procedures[,] or regulations does not constitute a violation of [the Eighth or Fourteenth Amendment], if constitutional minima are nevertheless met." (quoting *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

Thus, even if Lewis alleges Pearce violated SMCI procedures this, on its own, is not enough to state a constitutional rights violation. Because Lewis does not state a claim on which relief may be granted against Pearce, this claim should be dismissed under section 1915(e)(2). To the extent Lewis objected to the Report and Recommendation on this point, that objection is overruled.

### IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Report and Recommendation [38] entered by United States Magistrate Judge Robert P. Myers, Jr., on July 13, 2022, is ADOPTED. Lewis' objections [39] are overruled.

IT IS FURTHER ORDERED AND ADJUDGED that Csaszak, Errington, Cooley, and Cooksey's Motion for Summary Judgment [35] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that the claim against Connie Pearce a.k.a Connie Smith is DISMISSED WITH PREJUDICE.

THIS, the 27th day of September, 2022.

                                                TAYLOR B. McNEEL
                                                UNITED STATES DISTRICT JUDGE